# UNITED STATES DISTRICT COURT

for the
DISTRICT OF DELAWARE

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 14-164M
)
Middletown, Delaware 19709 )
)

**REDACTED**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ District of _____Delaware_____ *(identify the person or describe property to be searched and give its location)*: see ATTACHMENT A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: see ATTACHMENT B

**RECEIVED DEC 10 2014 U.S. DISTRICT COURT DISTRICT OF DELAWARE**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __18__ U.S.C. § __922(g) & 924(a)(2)__, and the application is based on these facts:

☒ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

CHRISTOPHER POPP  TASK FORCE OFFICER
Christopher Popp
Task Force Officer, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/10/14 @ 9:59 a.m.

_____
*Judge's signature*

City and state: Wilmington, DE

Honorable Christopher J. Burke
United States magistrate judge
*Printed name and title*

I, Christopher W. Popp, TFO (Task Force Officer), being duly sworn, depose and state that:

1. Your affiant is a sworn member of the Delaware State Police and has been such since October 16, 1998. I have been assigned to the U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") as a Task Force Officer in Wilmington, Delaware for approximately 2 years.

2. As part of my duties, responsibilities and training, and in the course of my investigative experience, I have become familiar with the statutes, rules and regulations, policies and procedures, relating to the ATF, including, but not limited to, the regulation and sale of firearms by Federally Licensed Firearms Dealers ("FFLs"), and other laws enforced by the ATF.

3. I have been involved in the investigation of approximately 100 cases involving firearms violations at the State and Federal level. I have participated in the seizure of approximately 1,000 firearms and thousands of rounds of ammunition. I have attended criminal investigation training provided by the ATF, Federal Bureau of Investigation ("FBI"), Drug Enforcement Agency, U.S. Attorney's Office for the District of Delaware, the Delaware State Police, and local police departments.

4. This affidavit is in support of a search warrant for the premises known as _____, Middletown, Delaware 19709, which is the single family home of Andrew COX, a white male, with a date of birth o ___ 🅶, social security number _____, and FBI Number _____. I am the case agent responsible for the investigation in aid of which this application is being made. This affidavit is based on my personal knowledge and observations as well as information provided to me by other law enforcement officers and a cooperating defendant, herein referred to as "the CD." Because this affidavit is solely for the limited purpose of establishing probable cause in support of this application for a warrant to search _____ Middletown, Delaware 19709, it does not set forth each and every fact known to me regarding this investigation.

5. On October 2, 2014, ATF Special Agent Patrick Fyock and I met with the CD in reference to a Andrew COX. The CD advised that he has regular contact with COX and has knowledge that COX is a person prohibited from owning, possessing or purchasing firearms because COX is a convicted felon. The CD further advised that COX was then currently in possession of multiple firearms and was manufacturing firearms by cutting down the barrels of shotguns below the legal length of 18 inches, in violation of The National Firearms Act, Title 26 United States Code, Sections 5861(a) and (f) (referred to below as "NFA" and "NFA firearms").

6. On October 2, 2014, the CD that stated COX, approximately 1 week prior to the CD's meeting with me and SA Fyock contacted the CD and asked if the CD wanted to purchase a .410 shotgun from him. Specifically, the CD stated COX indicated COX could sell the firearm to the CD as is for $100.00 dollars or COX could cut the barrel down, referring to it as sawed off, and sell the shotgun to the CD for $150.00. The CD advised that COX specifically stated he would complete the work for the CD by cutting down the barrel himself.

7. I have reviewed Andrew COX's criminal history from the National Crime Information Center ("NCIC") and Delaware Criminal Justice Information System ("DELJIS"). Those criminal history

documents indicate that COX is a person federally prohibited from owning, possessing, or purchasing a firearm based on a prior felony conviction. Specifically, COX was found guilty of Aggravated Menacing, a Class E Felony, on or about June 6th, 2002, in the Superior Court of Delaware in and for New Castle County, Case 0011003431. The Delaware State Police Troop 8 Complaint (number 06-00-104517) associated with that conviction documented that COX pointed a firearm at a member of the Delaware State Police Special Operations Response Team in connection with a drug investigation during the execution of a search warrant at COX's then-residence ___ , Newark, Delaware on or about November 3, 2000.

8. On December 9, 2014, I completed a DELJIS inquiry which lists COX's current address as ___ d, Middletown, Delaware 19709. On November 23, 2014, I conducted a DELJIS Motor Vehicle search which showed that a 1998 Buick Century bearing DE license number ___ is currently registered in COX's name with a listed address of ___ , Middletown, Delaware 19709.

9. On or about October 17, 2014, the CD made a consensually-monitored telephone call to COX who agreed to sell the CD the aforementioned .410 caliber shotgun for $150.00. At that time, COX advised the CD to come to ___ Middletown, Delaware 19709 to complete the purchase. COX told the CD that COX was currently in possession of the .410 shotgun and it was at his residence which COX stated was ___ Middletown, Delaware 19709.

10. On or about October 17th, 2014, ATF Special Agent Veronica Hnat and I met the CD at a predetermined location. The CD was provided with $150.00 in ATF Agent Cashier funds and a transmitter that the CD consented to carrying during the transaction, which agents contemporaneously monitored during the transaction. Additionally, the CD and the CD's vehicle were searched for contraband and firearms with negative results prior to the CD's traveling to meet with COX at ___ Middletown, Delaware 19709.

11. That same day, before the CD arrived at ___ Middletown, Delaware 19709, ATF TFO Christopher Bumgarner and ATF Special Agent Jason Kusheba set up surveillance on ___ . SA Hnat and I followed the CD and his vehicle directly to ___ from the predetermined meeting location and observed the CD drive into the driveway and park at ___ TFO Bumgarner observed COX come outside of his house and greet the CD after which they entered the home at ___ together.

12. While in the house, COX sold the CD for $150.00 a Ted Williams Sears & Roebuck .410 gauge shotgun, which COX explained he had altered by shortening the length of the barrel. COX explained that he had completed the work on the purchased .410 gauge shotgun himself and could manufacture/alter more firearms for the CD. While within the house at ___ , the CD advised that he saw additional firearms in a wooden display case, including shotguns, rifles, and handguns of various caliber in COX's living area within ___ which was in the basement of the residence. While COX's bedroom is in the basement of the home, your affiant learned from the CD that COX resides at ___ Middletown, Delaware 19709 with his minor son, mother and step-father. There

is no separate apartment in the basement. Accordingly, COX has access to the entirety of the home, not just the basement area.

13. Surveillance units maintained visual observation of the CD as he left with a bag (containing the below firearms and ammunition), got into his car, and drove to the predetermined meeting location where he provided SA Hnat and me with the following firearms and ammunition:

    a. A Ted Williams Sears Roebuck Co. .410 shotgun, bearing serial number 771184. This shotgun was later measured by SA Fyock and determined to have an altered barrel length of 8.5 inches and an overall length of 16 1/8th inches;
    b. A single shot black powder Derringer with Philadelphia stamped on the side. The Derringer was displayed on a wooden display plaque and also was sold by COX to the CD during the meet;
    c. 21 rounds of R & P 9mm Luger ammunition;
    d. 1 round of Winchester 40 S&W ammunition; and
    e. 1 round of Fiocchi 20 GA shotgun ammunition.

14. A further inspection of the Ted Williams Sears & Roebuck Co. .410 shotgun, serial number 771184, was completed. The firearm was measured for its specific lengths and was documented to have a barrel length of 8.5 inches and overall length of 16 1/8 inches, in violation of the National Firearms Act, which qualifies the firearm as requiring registry as an NFA weapon because the barrel is shorter than 18 inches in length.

15. On November 19, 2014, I submitted a National Firearms Registration and Transfer Record request on the Ted Williams Sears and Roebuck Co. .410 shotgun and COX to determine if COX had a properly applied for and/or possessed approval in accordance with the National Firearms Act to own or manufacture NFA firearms. On the same date, I was advised that there were no NFA registration records on file under COX's Name/DOB/SSN or serial number for this specific Ted Williams Sears and Roebuck Co. .410 shotgun sold by COX to the CD.

16. On November 22, 2014, the CD advised that COX again contacted him in regards to the CD's purchasing additional firearms from COX. The CD stated COX advised that COX was in possession of a .22 caliber rifle and a Mossberg shotgun and that COX could again alter one or both of these firearms by cutting down the barrel and putting on a pistol grip on the shotgun for the CD. The CD and COX agreed to meet at COX's residence on November 24, 2014 to conduct the firearms transaction.

17. On November 24, 2014, SA Fyock and I met with the CD at a predetermined location. Upon arrival at this location, the CD and his vehicle were searched for contraband and firearms with negative results. The CD was provided $375.00 in ATF Agent Cashier funds and a transmitter that the CD consented to carrying during the transaction, which was contemporaneously monitored during the transaction.

18. Surveillance was set up on ___ ___ d prior to the CD's arrival for the transaction with COX. SA Fyock and I followed the CD in his vehicle to ___ from the predetermined meet location and observed the CD drive into the driveway and park at COX's residence, ___ , Middletown, Delaware 19709.

19. While in ___ on November 24, 2014, COX sold the CD a .22 caliber rifle and the Mossberg shotgun they previously discussed for a total of $375.00. COX had not altered the shotgun prior to the CD's arrival and completed the work with the CD present in the home. The CD told me that he watched COX cut the length of the Mossberg shotgun barrel and then use a file to smooth the barrel. The firearm was altered in COX's bedroom in the basement of the residence. The CD told me that, while within ___ . COX handed the CD another shotgun that COX stated belonged to COX, explaining that he had previously cut down the barrel of that firearm as well. After showing this second altered shotgun to the CD, COX placed it on his bed.

20. I was able to contemporaneously monitor the cutting and sanding of the Mossberg shotgun and the conversations between COX and the CD via the recording device worn by the CD. During this interaction, COX talked about the multiple firearms he possesses, where and from whom he has illegally obtained firearms, and how he has manufactured NFA-regulated firearms on previous occasions.

21. The CD told your affiant that, while within ___ on November 24, 2014, the CD observed additional firearms in COX's living area in the basement, including shotguns, rifles, and handguns of various caliber.

22. Surveillance units maintained visual observation of the CD as he left ___ and drove to the predetermined meeting location. The CD and his vehicle were again searched for contraband, including additional firearms, with negative results. The CD provided SA Fyock and me with the following firearms:

    a. 1 Mossberg .12 gauge shotgun, model 835, bearing serial #UM489116, along with the portion of the barrel that was cut off by COX; and
    b. 1 Marlin .22 caliber Rifle, model 99, with no visible serial number because serial numbers were not required for rifles manufactured prior to 1968.

23. A further inspection of the Mossberg .12 gauge shotgun, model 835, bearing serial number #UM489116 was completed. The firearm was measured for its specific lengths and documented as having a barrel length of 16 inches and an overall length of 36 5/8 inches and thus qualifies as an weapon that needs to be registered as an NFA firearm.

24. On November 24, 2014, I submitted a National Firearms Registration and Transfer Record request on the Mossberg .12 gauge shotgun, model 835, bearing serial number #UM489116 and COX. On the same date, I was advised there were no NFA registration records on file under

COX's Name/DOB/SSN or serial number for this specific Mossberg .12 gauge shotgun sold by COX to the CD.

25. I know from training and experience that persons who maintain firearms in their possession often maintain additional ammunition, paper records related to the purchases and sales of weapons, cleaning supplies, and weapons' accessories.

26. In addition, your affiant knows that it is a violation of federal law for a person to possess certain types of firearms which are not registered to the person in the National Firearms Registration and Transfer Record, 26 U.S.C. Section 5861(d). A "firearm" for purposes of Title 26 includes any "shotgun having a barrel or barrels of less than 18 inches in length", as well as a "machine gun." *See* 26 U.S.C. Sections 5845(a)(1), (6). Thus, any possession of a sawed-off shotgun with a barrel of less than 18 inches without that same possession being registered to the person in the National Firearms Registration and Transfer Record is a violation of federal law. Moreover, any possession of a firearm by COX, in light of his prior felony conviction, is a violation of 18 U.S.C. Section 922(g).

27. Based on my training and experience, and your affiants participation in this investigation as set forth in the foregoing, I believe that there is probable cause to believe that COX violated Title 18 United States Code, Sections 922(g) and 924(a)(2) by possessing in and affecting interstate commerce firearms, after having previously been convicted of a felony crime punishable by imprisonment for a term exceeding one year. Your affiant also believes that there is probable cause to believe that COX violated Title 26, United States Code, Section 5861(a) and (f). I further believe that firearms and other items pertaining to the possession of firearms, including gun cases, ammunition, ammunition magazines, holsters, spare parts for firearms, firearms cleaning equipment, photographs of firearms or of persons in possession of firearms, receipts for the purchase and/or repair of all these items, receipts of sale for all of these items, or documents relating to the possession of firearms are located within COX's living quarters in the basement of the residence known as _____, Middletown, Delaware, 19709, as more particularly described in Attachment A. I further respectfully request that the Court issue a Search Warrant to search for and seize from _____ Middletown, Delaware those items, as more particularly described in Attachment B.

_____
Christopher Popp
Task Force Officer, Bureau of Alcohol, Tobacco, Firearms & Explosives

Dated: December 10, 2014

Sworn to and subscribed in my presence
this 10th day of December 2014.

_____
United States Magistrate Judge

28. Because no firearms are manufactured within the District of Delaware, your affiant respectfully asserts that each of the guns which the CD purchased, + each of the firearms which the CD saw traveled in interstate commerce prior to the CD seeing or purchasing them from Cox at

## Attachment A

### Locations to be Searched

A.

Middletown, Delaware 19709

　, Middletown, DE is single family home. The residence consists of tan siding, black shutters, and white trim. The residence has a white exterior glass front door and a brick front porch. The number ___ is affixed to the wood post of the black mailbox at the front of the residence.

See photograph c　　　　　　　　　　Middletown, Delaware 19709 which is attached hereto and incorporated herein.



## Attachment B

### Items to be Searched For

Firearms and other items pertaining to the possession of firearms, including firearms, gun cases, ammunition, ammunition magazines, holsters, spare parts for firearms, firearms cleaning equipment, photographs of firearms or of persons in possession of firearms, receipts for the purchase and/or repair of all these items, receipts of sale for all of these items, or documents relating to the possession of firearms. Tools that would be used to alter firearms to include but not limited to saws, files, sanders, and paint stain used to finish the barrel of the firearm.